DECISION.
{¶ 1} Defendant-appellant Terry Allen was convicted of breaking and entering,[1] aggravated robbery,[2]
rape,[3] two counts of kidnapping,[4] and having weapons while under a disability,[5] in relation to two separate incidents that occurred in the spring of 2004. Four of the charges also included firearm and repeat-violent-offender specifications.
 {¶ 2} Allen was classified a sexual predator and sentenced to 57 years' incarceration. He now appeals, claiming errors in (1) the joinder of the indictments; (2) the admission of hearsay evidence; (3) the ineffective assistance of trial counsel; (4) the sufficiency and the manifest weight of the evidence; (5) his classification as a sexual predator; and (6) the imposition of maximum, consecutive sentences. But Allen has now withdrawn his sixth assignment of error — the challenge of the sentence — in light of State v. Foster.[6]
 {¶ 3} Allen has presented the classic "everything-but-the-kitchen-sink" appeal. But it's not enough. We do not believe that the trial court erred in joining the offenses where the two offenses were simple and distinct. We do not find merit in Allen's contentions that the trial court made erroneous evidentiary rulings or that the evidence was insufficient to convict him or weighed against the conviction. Additionally, while Allen's trial counsel failed to object to some hearsay testimony, counsel's performance did not fall below an objective standard of reasonableness. But in regard to the sexual-offender-classification hearing, the trial court failed to make the proper findings necessary to designate Allen a sexual predator. While we affirm the convictions, we reverse the sexual-predator adjudication and remand this case for a new classification hearing.
 I. A Rape of Opportunity — DNA Catches the Perpetrator {¶ 4} Around 3:00 AM on March 13, 2004, Allen and two accomplices broke down the door of Angelique Greene's apartment. (We do not know the identity of the two accomplices in this case, so they are referred to as the "first accomplice" and the "second accomplice.") Greene was asleep in her bedroom with her five-month-old baby, Mikah, while her teen-aged cousin, Ahna White, slept in the living room with Greene's five-year-old son, Jaiden. Two men entered the apartment armed — Allen went into the bedroom to question Greene while the first accomplice stayed out in the living room with Ahna and Jaiden.
 {¶ 5} Allen demanded to know where Greene's boyfriend, Gabe Krull, kept his drugs and money. But Greene did not know if these items were in the apartment because she had asked Krull to keep them away from the children. She did know where a gun was located and took Allen to the laundry room where Krull kept an assault rifle. Allen and his first accomplice ransacked the apartment, looking for any drugs or money.
 {¶ 6} When Allen and the first accomplice could not find any drugs or money, they communicated with a second accomplice by walkie-talkie. At the direction of the second accomplice, the first accomplice walked into the bedroom and picked up Mikah.
 {¶ 7} When the first accomplice picked Mikah up, he noticed a second bedroom that was only accessible through the first bedroom. Allen and the first accomplice then forced Greene and her family into the second bedroom. During this time, the first accomplice still had a gun pointed at Mikah's head. Allen and the first accomplice searched the second bedroom, but again did not find any drugs or money. Mikah was then handed over to Ahna, as Allen took Greene into the first bedroom.
 {¶ 8} Allen then told Greene that if there was nothing in the apartment for him to take from Krull, then he was going to "take her" as he pulled on her underwear. Since Allen still had a gun in his hand, Greene took off her underwear and lay face-down on the floor. Allen then vaginally raped her and ejaculated on her buttocks.
 {¶ 9} After raping her, Allen ordered Greene to get up and take a shower. Allen then continued his search for drugs or money and instructed the first accomplice to make sure that Greene showered. While Greene did enter the shower, she did not wash the parts of her body where Allen had left his semen.
 {¶ 10} The two men eventually left when the building's owner, Sylvia Krull, came down from an upstairs apartment and threatened to call the police because of all the noise. They took the assault rifle that Greene had showed Allen in the laundry room.
 {¶ 11} Cincinnati police responded, and Greene was taken to University Hospital for a rape examination, but she left before being examined. She did turn over her underwear and pants to the police when she arrived home in the morning. Greene could not identify the two intruders because they had pulled down knit hats to conceal their faces. No identifiable fingerprints were found at the scene — the intruders wore gloves.
 {¶ 12} Greene's underwear and pants were submitted to the Hamilton County Coroner's laboratory for DNA analysis. Semen was found on the underwear and a DNA profile was obtained. When the DNA profile was entered into the Combined DNA Index System ("CODIS"), there was a hit — the DNA profile matched Allen's DNA. Allen's DNA profile was on file with CODIS due to a conviction for voluntary manslaughter in 1992.
 II. Breaking and Entering and then Cowering in the Bushes {¶ 13} By the time the DNA pointed to Allen three months after the rape, Allen was being held in the Hamilton County Justice Center on another crime — breaking and entering into the Community Development Corporations Association of Greater Cincinnati building on Colerain Avenue.
 {¶ 14} Allen was arrested for that crime on May 12, 2004, when he and two accomplices were observed removing office equipment from the building and loading it into a blue vehicle at 3:00 AM. When Cincinnati police officers responded, Allen and his two accomplices fled on foot.
 {¶ 15} Cincinnati police set up a perimeter and requested a K-9 unit to respond. The K-9 unit tracked in the direction where two of the individuals had fled and found a handgun in a vacant field directly across from the building they had broken into. Allen was found with one of his accomplices hiding in some nearby shrubbery.
 {¶ 16} The police obtained a search warrant and searched the blue vehicle secured at the scene. In addition to the office equipment that the 911 caller had seen the three men take, officers found walkie-talkies, disposable gloves, ammunition, and an assault rifle similar to the one described by Greene as taken during the rape.
 {¶ 17} A jury found Allen guilty of all charges — breaking and entering, aggravated burglary, rape, two counts of kidnapping, and having weapons while under a disability. The trial court found him guilty of the repeat-violent-offender specifications. Allen was classified as a sexual predator and sentenced to 57 years in prison.
 III. Joinder {¶ 18} Allen's first assignment of error claims that he was prejudiced when the trial court granted the state's joinder motion. Under Crim.R. 8(A), two or more offenses may be charged in the same indictment if the offenses charged, whether felonies or misdemeanors or both, are (1) of "the same or similar character," (2) "based on the same act or transaction," (3) "based on two or more acts or transactions connected together or constituting parts of a common scheme or plan," or (4) "part of a course of criminal conduct." Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses.[7]
 {¶ 19} Allen claims that the trial court erred by refusing to sever the offenses. To prevail, he must affirmatively demonstrate that (1) his rights were prejudiced by the failure to sever, (2) he provided the court with sufficient information to allow it to weigh the benefits of joinder against his right to a fair trial, and (3) the trial court abused its discretion by refusing to sever the charges for trial given the information it had been provided.[8]
 {¶ 20} We begin with an analysis of whether Allen was prejudiced by the joinder of the two different offenses at trial. When defendants claims that they were prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other acts or crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct.[9] If the evidence of other crimes would be admissible at separate trials, any "prejudice that might result from the jury's hearing the evidence of the other crime[s] in a joint trial would be no different from that possible in separate trials," and a court need not inquire further.[10]
 {¶ 21} In this particular case, the "simple and distinct" test has been satisfied. The object of the simple-and-distinct test is to prevent the jury from improperly considering evidence of various crimes as corroborative of each other.[11] "The very essence of the rule is that the evidence be such that the jury is unlikely to be confused by it or misuse it."[12]
Generally, under the simple-and-distinct test, if the evidence of each offense is direct and uncomplicated, it is presumed that the trier of fact is capable of segregating the proof and not cumulating evidence of the various offenses being tried.[13] We are convinced that the facts surrounding each of Allen's offenses were "simple and distinct" so that the jury could independently consider the facts of each before coming to a verdict.
 {¶ 22} We conclude that Allen's first assignment of error is without merit. The trial court did not err in allowing the offenses to be joined.
 IV. Hearsay Evidence {¶ 23} Allen's second assignment of error maintains that the trial court erred by permitting inadmissible hearsay evidence during the testimony of Officer Dwight Pewett and the victims, Angelique Greene and Ahna White. Allen does not point to any specific testimony in his brief, but generally challenges Officer Pewett's testimony about what Greene had told him, and Greene's and Ahna's testimony about what the perpetrators had said to them and to each other.
 {¶ 24} In this case, Allen has challenged statements that he believes are inadmissible hearsay. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[14] Hearsay evidence is generally not admissible.[15]
 {¶ 25} Allen asserts that the trial court erroneously permitted Officer Pewett to testify about statements Greene made to him when he arrived at the scene. Our review of the record reveals two instances where Officer Pewett testified about what Greene had said to him.
 {¶ 26} The first instance was Officer Pewett's testimony that Greene had told him that she had been sexually assaulted. While we agree with Allen that this statement was technically hearsay and that there was no exception for its admission, Allen's trial counsel failed to object. Thus, this statement is reviewed under a plain-error standard. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."[16] Plain error does not exist unless, but for the error, the outcome at trial would have been different.[17] Because Greene later testified that she told the police that she had been sexually assaulted, the admission of hearsay statements during Officer Pewett's testimony was harmless error.
 {¶ 27} The second incident was Officer's Pewett's testimony regarding Greene's description of the perpetrators. But the record demonstrates that the prosecutor withdrew the question. There was no hearsay statement admitted to prejudice Allen.
 {¶ 28} Allen also challenges Greene's and Ahna's testimony about what the perpetrators had said to them and to each other. As we have already stated, out-of-court statements offered to prove the truth of the matter asserted within them are generally inadmissible as hearsay. But if a statement is not offered for the truth of the matter asserted, it is not prohibited by the hearsay rule and will be admissible, subject to the standards governing relevancy and undue prejudice.[18] Accordingly, "testimony which explains the actions of a witness to whom a statement was directed, such as to explain the witness' activities, is not hearsay."[19]
 {¶ 29} In the present case, the trial court properly permitted the testimony from Greene and Ahna because the statements were not offered for their truth — they merely showed that they followed the commands of Allen and his first accomplice. Allen's statements were admissible as nonhearsay demonstrating that Greene and Ahna had heard the commands and listened to them — commands that led to rape.
 {¶ 30} Allen's second assignment of error is not well taken. There was only one incident of inadmissible hearsay, trial counsel failed to object, and it did not rise to the level of plain error.
 V. Ineffective Assistance of Counsel {¶ 31} Allen's third assignment of error contends that his trial counsel was ineffective for failing to (1) object to hearsay testimony and (2) request a clinic evaluation for the purposes of the sexual-predator-classification hearing.
 {¶ 32} In Strickland v. Washington, the United States Supreme Court enunciated the two-prong standard for evaluating claims of ineffective assistance of counsel.[20] When a defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.[21]
There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[22]
The Court further stated that counsel's performance must have prejudiced the defense so as to deprive the defendant of a fair trial.[23] This means that the "defendant must [also] show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."[24]
 {¶ 33} In our view, Allen did not receive ineffective assistance of counsel merely because trial counsel failed to object to inadmissible hearsay evidence. As we have already recounted, there was only one instance of inadmissible hearsay — Officer Pewett testifying that Greene had told him that she was sexually assaulted — but that information also came out during Greene's testimony. The record further demonstrates that Allen's trial counsel made multiple objections throughout the trial to both questions posed and evidence presented. The instance that Allen complains of now easily falls within the rubric of "reasonable trial strategy" and does not fall below an objective standard of reasonableness. There was no reason to object to technical hearsay when the information would be given by the victim anyway. Additionally, Allen suffered no prejudice from his trial counsel's failure to object to the statement.
 {¶ 34} Allen also challenges his counsel's failure to request a court clinic evaluation for purposes of the sexual-offender-classification hearing. Because we remand this case for a new classification hearing, the issue is now moot.
 {¶ 35} We conclude that Allen's third assignment of error in regard to his trial counsel's failure to object to hearsay statements is without merit. Additionally, the other allegation of ineffective assistance of counsel is moot now that we are remanding for a new sexual-offender-classification hearing.
 VI. Sufficiency and Weight of the Evidence {¶ 36} Allen's fourth assignment of error challenges the sufficiency and weight of the evidence in the case numbered B-0406236. In particular, Allen maintains that, without the DNA evidence, there was no other evidence presented that connected him to the aggravated robbery, kidnapping, and weapons-under-disability charges. And in regard to the rape, although he admitted that he had sexual intercourse with Greene, he denied (1) being one of the perpetrators who had entered her apartment, and (2) forcing her to engage in sexual intercourse. Allen also relies on his attempt to discredit Greene's testimony.
 {¶ 37} When reviewing the sufficiency of the evidence to support a criminal conviction, we must examine the evidence admitted at trial in the light most favorable to the state and determine whether such evidence could have convinced any rational trier of fact that the essential elements of the crime had been proved beyond a reasonable doubt.[25]
 {¶ 38} A review of the manifest weight of the evidence puts the appellate court in the role of a "thirteenth juror."[26] We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[27] A new trial should be granted only in exceptional cases where the evidence weighs heavily against the conviction.[28]
 {¶ 39} Allen was convicted of aggravated robbery, rape, two counts of kidnapping, and having weapons while under a disability. The aggravated-robbery statute states that no person shall trespass in an occupied structure with the purpose to commit a criminal offense when controlling a deadly weapon.[29] The rape statute forbids sexual conduct with another when an offender compels the other person to submit by force or threat of force.[30] The kidnapping statute prohibits a person from restraining the liberty of another person to facilitate the commission of any felony.[31] And the weapons-under-disability statute proscribes a person from carrying or using a firearm when that person has previously been convicted of a felony offense of violence.[32]
 {¶ 40} The state presented Greene's testimony that Allen had forcefully entered her apartment at gunpoint as she and members of her family were sleeping. Greene further testified that when Allen and his first accomplice could not find Krull's drugs and money, Allen forced Greene at gunpoint to engage in sexual intercourse. Additionally, Allen forced Greene, and aided and abetted in forcing her five-month-old baby, at gunpoint into another room to facilitate the burglary. Allen engaged in this behavior while using a firearm — and he had previously been convicted of voluntary manslaughter and had not been relieved of his disability.
 {¶ 41} And the DNA evidence was enough to put Allen at the scene. The DNA taken from Green's underwear matched Allen's DNA. When the police asked Allen if he knew Greene, he denied knowing her. But after being confronted with the DNA evidence, Allen changed his story and claimed that he had consensual sexual intercourse with Greene. The jury did not believe Allen's story.
 {¶ 42} We conclude that a rational juror, viewing the evidence in a light most favorable to the state, could and did find that the state had proved beyond a reasonable doubt that Allen had committed the offenses of breaking and entering, aggravated robbery, rape, two counts of kidnapping, and having weapons while under a disability. Therefore, the evidence presented was legally sufficient to sustain Allen's convictions.
 {¶ 43} While Allen presented a different scenario of events, our review of the record does not persuade us that the jury clearly lost its way and created a manifest miscarriage of justice in finding Allen guilty of aggravated robbery, rape, two counts of kidnapping, and having weapons while under a disability. Therefore, the convictions were not against the manifest weight of the evidence.
 {¶ 44} Allen's fourth assignment of error is without merit.
 VII. Sexual-Predator Designation {¶ 45} Allen's fifth assignment of error claims that the trial court erred as a matter of law by classifying him as a sexual predator. In particular, Allen challenges whether the trial court provided the due process required for a sexual-predator classification.
 {¶ 46} A sexual predator is defined as a "person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."[33] Before a trial court may adjudicate an offender as a sexual predator, it must first conduct a sexual-predator hearing in the manner described in R.C.2950.09(B)(1).
 {¶ 47} In making a determination whether an offender is a sexual predator, the trial court must consider all relevant factors, including, but not limited to, the following: (1) the offender's age; (2) the offender's prior criminal record; (3) the age of the victim; (4) whether the offense involved multiple victims; (5) whether the offender used drugs or alcohol to impair the victim; (6) whether the offender completed any sentence imposed for a prior criminal offense or participated in available programs for sexual offenders; (7) any mental illness or mental disability of the offender; (8) the nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim, and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse; (9) whether the offender, during the offense, displayed cruelty or made one or more threats of cruelty; and (10) any additional behavioral characteristics that contributed to the offender's conduct.[34]
 {¶ 48} After the trial court reviews the testimony and evidence presented at the sexual-predator hearing and considers the factors specified in R.C. 2950.09 (B)(3), it "shall determine by clear and convincing evidence whether the offender is a sexual predator."[35] Accordingly, we must examine the record to determine whether there was sufficient evidence before the trial court to classify Allen as a sexual predator by a clear and convincing degree of proof. Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of facts a firm belief or conviction as to the truth of the allegations sought to be established.[36]
 {¶ 49} To fully ensure compliance with the applicable principles of law and to provide fairness in sexual-predator hearings, the Ohio State Supreme Court, in State v. Eppinger,
adopted a model procedure for sexual-offender-classification hearings.[37] The model procedure provided by Eppinger
delineates three objectives for every sexual-predator hearing: (1) it is critical that a record be created for review; (2) an expert may be required to assist the trial court in determining whether the offender is likely to engage in the future in a sexually-oriented offense; (3) the trial court should consider the statutory factors listed in R.C. 2950.09(B)(3) and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the defendant's likelihood of recidivism.[38] Allen's assignment of error claims that the trial court did not adequately fulfill the third objective of the Eppinger model procedure for his sexual-predator-classification hearing.
 {¶ 50} In the present case, the trial court held the classification hearing immediately prior to the sentencing hearing. During the hearing, the court took into consideration the facts surrounding the breaking-and-entering, aggravated robbery, rape, kidnapping, and weapons-under-disability offenses. Obviously, Allen was convicted of committing a sexually-oriented offense — the rape of Greene. The issue was whether Allen was likely to engage in the future in one or more sexually-oriented offenses to be designated a sexual predator.
 {¶ 51} In a somewhat perfunctory fashion, the trial court stated for the record that it had considered the factors under R.C. 2950.09(B)(3) and found that Allen had a previous conviction for voluntary manslaughter, and that he had displayed cruelty during the commission of the crimes. The trial court then stated that "it is clear he's a sociopath, he has no conscience at all. * * * I find he's clearly a sexual predator." But the trial court did not state any reasons on the record regarding Allen's likelihood of recidivism. In fact, the entire transcript for the classification hearing consisted of six pages. Additionally, Allen's trial counsel failed to request a court clinic evaluation — despite the fact that this was Allen's first sexually-oriented offense. The trial court was thus without any expert opinion on the likelihood of Allen's recidivism.
 {¶ 52} We note that Eppinger merely suggests standards for trial courts to follow in a "model sexual offender classification hearing." While courts are encouraged to follow the model, the failure of a trial court to strictly adhere to the three requirements of the "model hearing" described in Eppinger does not, per se, result in reversal upon appeal. But in this instance, we are left without any reasoning as to how the trial court found the second element for its sexual-predator designation — the likelihood of Allen's recidivism.
 {¶ 53} In this limited instance, where this was Allen's first sexually-oriented offense, there was no court clinic report, and the court made a cursory finding that Allen had displayed cruelty and had previously been convicted of voluntary manslaughter, the evidence only demonstrated that Allen is a violent person — not necessarily a person who is likely to commit another sexual offense. It is this second element that has not been proved for Allen's designation as a sexual predator.
 {¶ 54} We realize that it might seem odd to bring Allen back from prison for a new sexual-offender-classification hearing while he is serving a 57-year sentence. By the time he serves his sentence, Allen will be 87 years old. Even if Allen survives his sentence in prison, it is unlikely that an 87-year-old man would be a sexual predator. But we cannot ignore the due-process requirements of a sexual-offender-classification hearing.
 {¶ 55} We conclude that the manifest weight of the evidence does not support the trial court's classification of Allen as a sexual predator by a clear and convincing degree of proof. Allen's fifth assignment of error is sustained.
 {¶ 56} Accordingly, we affirm Allen's conviction. But we reverse his sexual-predator adjudication and remand for a new sexual-offender-classification hearing.
Affirmed in part and reversed in part, and cause remanded.
Gorman, P.J., and Hendon, J., concur.
[1] R.C. 2911.13(A).
[2] R.C. 2911.11(A)(2).
[3] R.C. 2907.02(A)(2).
[4] R.C. 2905.01(A)(2).
[5] R.C. 2923.13(A)(2).
[6] See State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.
[7] See State v. Schaim, 65 Ohio St.3d 51, 58, 1992-Ohio-31,600 N.E.2d 661, citing State v. Torres (1981),66 Ohio St.2d 340, 343, 421 N.E.2d 1288, and 2 LaFave Israel, Criminal Procedure (1984) 354-355, Section 17.1.
[8] Id. at 59.
[9] See State v. Hamblin (1988), 37 Ohio St.3d 153, 158-159,524 N.E.2d 476.
[10] Schaim, 65 Ohio St.3d at 59, citing Drew v. UnitedStates (C.A.D.C. 1984), 331 F.2d 85, 90.
[11] See State v. Wiles (1991), 59 Ohio St.3d 71, 77,571 N.E.2d 97; State v. Van Sickle (1993), 90 Ohio App.3d 301, 306,629 N.E.2d 39.
[12] See State v. Echols (1998), 128 Ohio App.3d 677, 694,716 N.E.2d 728, quoting Drew v. United States (C.A.D.C. 1964),331 F.2d 85.
[13] Id., citing State v. Brooks (1989), 44 Ohio St.3d 185,542 N.E.2d 636.
[14] Evid.R. 801(C).
[15] Evid.R. 802.
[16] See State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph three of the syllabus.
[17] See State v. Moreland (1990), 50 Ohio St.3d 58, 62,552 N.E.2d 894.
[18] See State v. Maurer, 15 Ohio St.3d 239, 262-263,473 N.E.2d 768.
[19] Id.
[20] See Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052.
[21] Id. at 687-688.
[22] Id.
[23] Id.
[24] Id. at 694.
[25] See State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[26] See State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.
[27] Id., citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211.
[28] Id.
[29] R.C. 2911.11(A)(2).
[30] R.C. 2907.02(A)(2).
[31] R.C. 2905.01(A)(2).
[32] R.C. 2923.13(A)(2).
[33] R.C. 2950.01(E).
[34] R.C. 2950.09(B)(3).
[35] R.C. 2950.09(C)(2)(c).
[36] See Cross v. Ledford (1954), 161 Ohio St. 469, 477,120 N.E.2d 118.
[37] See State v. Eppinger (2001), 91 Ohio St.3d 158, 166, 2001-Ohio-247, 743 N.E.2d 881.
[38] Id., citing State v. Thompson (1999),140 Ohio App.3d 638, 748 N.E.2d 1144.