DECISION. *Page 2 
{¶ 1} In the case numbered B-0504953,[1] defendant-appellant Cecil Bailey was indicted with another for aggravated robbery in violation of R.C. 2911.01(A)(1) and robbery in violation of R.C. 2911.02(A)(2). The aggravated-robbery count contained firearm specifications. While out on bond, Bailey was indicted in the case numbered B-0505675[2] for having a weapon while under a disability in violation of R.C. 2923.13(A)(2). The state specified that the disability derived from Bailey's aggravated-robbery indictment.
 {¶ 2} The trial court consolidated Bailey's cases for a jury trial, and Bailey was found guilty of all charges in both indictments. The trial court sentenced him to an aggregate term of 15 years' incarceration.
 {¶ 3} In these consolidated appeals, Bailey challenges his convictions for the following reasons: (1) the trial court erred in overruling his motion to sever the indictments; (2) the trial court erred in overruling his Batson challenge during voir dire; (3) his convictions were not supported by sufficient evidence and were contrary to the manifest weight of the evidence; (4) his Confrontation Clause and fair-trial rights were violated where the jury heard "testimonial" statements that were not subject to cross-examination; (5) he was sentenced based upon unconstitutional statutes; and (6) the trial court penalized him for exercising his right to a jury trial. *Page 3 
 {¶ 4} We hold that the trial court erred in sentencing Bailey under unconstitutional statutes and vacate his sentence in part, but we affirm the trial court's judgment in all other respects.
 Facts {¶ 5} In the evening hours of May 17, 2005, Karolyn Bush was robbed at gunpoint of money and marijuana while operating a neighborhood sundry store out of her home in Cincinnati. Bush testified at trial that, just before she was robbed, Bailey had entered her store and asked if she sold clove cigarettes. As Bush turned to get the cigarettes, a man she knew as La Don entered the store, ran up behind her, stuck a silver gun in her neck, and demanded everything she had in the cash register. Bush opened the cash register. Then, according to Bush, Bailey came around the counter that separated the cash register from the customer area, grabbed most of the money out of the register, and ran out of the store. La Don took a bag of marijuana out of Bush's pocket and the remaining money in the register before exiting.
 {¶ 6} Immediately after the robbery, Bush told the police that she recognized both of her assailants from the neighborhood. She could only remember La Don's name at that time, but she recalled Bailey's name a short time later. She positively identified Bailey in a photograph during the investigation and in person at trial.
 {¶ 7} Bailey testified at trial and presented a different version of the robbery. He told the jury that he was shopping alone in Bush's store, buying clove cigarettes, when La Don came in asking for marijuana. When Bush reached underneath the counter to get the marijuana, La Don then pointed a gun at her and told her to put her money and marijuana on the counter. La Don then signaled to *Page 4 
Bailey to push them towards him. Bailey claimed that he complied and then ran out of the store when La Don looked away. He said that he feared for his own safety because he had been shot with a gun ten times before. Bailey further testified that he did not know La Don.
 {¶ 8} Bailey was impeached on cross-examination with a taped statement that he had given to the police during the investigation of the robbery.
In this statement, Bailey told the police that he had been shopping in Bush's store with a boy named De Monte when La Don held Bush at gunpoint; that De Monte had given La Don the money in Bush's cash register; that he had stayed in the store until La Don exited; and that La Don had called him by his name and shook his hand after entering Bush's store.
 {¶ 9} In response to the impeachment, Bailey told the jury that he had lied to the police in the taped statement to avoid an arrest, and that his trial testimony was correct. He denied any involvement in the robbery, stating that he had passed the money and marijuana from Bush to Bailey because he was ordered at gunpoint to do so.
 {¶ 10} About two weeks after Bailey was indicted for the robbery offenses, the police were called to a disturbance in Bailey's neighborhood. Specifically, shortly after midnight on June 9, 2005, Cincinnati Police Officers Joshua Brickler and Kevin Kroger responded to a radio call that someone was firing a weapon in the 1600 block of Westwood Avenue. As Brickler and Kroger approached the area in their police vehicle, a woman ran at them with her hands waving in the air. This woman gave them information that led them to an apartment owned by Bailey's uncle, David *Page 5 
Sprawl. Officer Michael Reynolds joined Brickler and Kroger in their search for the suspect.
 {¶ 11} When the police knocked on the door of Sprawl's apartment, Sprawl's dog began barking. Bailey was present in the apartment and put the dog in a closet in the front room. Bailey then answered the door and allowed the police to enter. Sprawl was in a back bedroom when the police entered.
 {¶ 12} Upon entering, the police heard noises coming from the closet and asked Bailey about the noises. Bailey explained that a dog was in the closet, and then either Bailey or the police opened the closet door. The dog ran out, and the police saw a chrome handgun on the closet floor. The handgun contained an empty cartridge. Bailey was then handcuffed, and an officer performed a gunshot-residue test on Bailey's hands. The test showed a positive result for one particle of lead-bearing antimony. A forensic scientist in trace analysis testified that this evidence indicated that recently Bailey had fired a weapon, had handled a weapon that contained gunshot residue, had stood near a weapon while it was fired, or had been touched by a person who had gunshot residue on his hands.
 I. Motion to Sever {¶ 13} In his first assignment of error, Bailey claims that the trial court erred by overruling his motion to sever the trials of the separate indictments. He sought a severance under Crim.R. 14, arguing that having a single trial for both indictments would be prejudicial because the jury would inevitably consider evidence of the second incident in reaching a verdict on the first. Thus, the jury could infer that the gun found in Bailey's uncle's closet was the gun used in the robbery, even though the state did not ultimately present this argument at trial. *Page 6 
 {¶ 14} Bailey implicitly concedes that the trial court could have joined the two indictments for trial under Crim.R. 13: the charges could have been originally joined in one indictment under Crim.R. 8(A), where the disability alleged in the weapons count was based upon Bailey's pending indictment for aggravated robbery. The issue, then, is whether Bailey was prejudiced by the trial court's refusal to grant him separate trials of the two indictments.
 {¶ 15} To demonstrate an error in failing to sever, a defendant must show that (1) his rights were prejudiced by the joinder; (2) at the time he moved to sever, he provided the court with sufficient information to weigh the considerations favoring joinder against his right to a fair trial; and (3) the trial court abused its discretion in overruling the motion.[3]
 {¶ 16} When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other acts or crimes would have been admissible even if the counts had been severed, and (2) if not, whether the evidence of each crime was simple and distinct.[4]
 {¶ 17} Bailey claims that the evidence relating to the weapons offense would not have been admissible at a separate trial for the robbery offenses. Assuming that this is true, we are convinced that Bailey was not prejudiced by the joinder where the evidence of each crime was simple and distinct.
 {¶ 18} "The object of the simple-and-distinct test is to prevent the jury from improperly considering evidence of various crimes as corroborative of each other."[5] Generally, where the evidence of each offense is "direct and uncomplicated," the trier *Page 7 
of fact is presumed "capable of separating the proof and not cumulating evidence of the various offenses being tried."[6] Nonetheless, where the offenses are unrelated, the evidence must be such that it could sustain "each verdict, whether or not the indictments were tried together."[7]
 {¶ 19} In this case, the facts supporting the robbery offenses were direct and uncomplicated: on May 17, 2005, Bailey aided and abetted the armed robbery of Bush's store by taking money out of the cash register and fleeing. Likewise, the facts supporting the weapon-under-disability offense were direct and uncomplicated: on June 9, 2005, Bailey possessed a weapon while under indictment for aggravated robbery.
 {¶ 20} Further, the state did not present any evidence or argument connecting the crimes and did not argue that Bailey had handled a firearm on May 17, the date of the robbery. The jury was instructed twice to "consider separate counts separately." Additionally, the state presented sufficient evidence of each offense to avoid the taint of a verdict based upon improper corroboration by the other charges.
 {¶ 21} Bailey has failed to demonstrate that his rights were prejudiced by the joinder of the indictments. Thus, his claim that the trial court erred in denying his motion to sever is meritless. Accordingly, we overrule the first assignment of error.
 II. Batson Challenge {¶ 22} In his second assignment of error, Bailey argues that the trial court erred by permitting the state to exercise a peremptory challenge to excuse the sole *Page 8 
African-American on the jury panel. Bailey claims that the state's reason for striking the juror was pretextual and discriminatory.
 {¶ 23} In Batson v. Kentucky,[8] the Supreme Court held that purposeful discrimination in the use of peremptory challenges to exclude members of a minority group violates the Equal Protection Clause of the United States Constitution. A Batson claim for purposeful discrimination in juror selection encompasses three steps. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor has exercised a peremptory challenge on the basis of race.[9] Second, if the defendant has made a prima facie showing, the burden shifts to the prosecutor to present a race-neutral explanation for the challenge.[10] Finally, the court must determine whether the defendant has carried his burden of proving purposeful discrimination.[11]
 {¶ 24} A defendant may raise a Batson claim where the state has only challenged one African-American prospective juror.[12] The race-neutral explanation given by the prosecutor during aBatson challenge need not rise to the level justifying a challenge for cause.[13] A trial court's finding of no discriminatory intent will not be reversed on appeal unless it is clearly erroneous.[14]
 {¶ 25} During voir dire, the prospective juror informed the state that he had three uncles who had been convicted of crimes, including robbery. He stated that he did not want to be on the jury because of the subject matter involved, and because he *Page 9 
was familiar with Bailey from his neighborhood. During further inquiry, he repeated three more times that he did not want to be on the jury, although he felt that he could be fair. The prosecutor asked the court to excuse the juror for cause, claiming that the juror's repeated desire not to sit on the jury indicated an undisclosed bias either for or against Bailey. Defense counsel reminded the court that Bailey was the only African-American in the jury pool. The court denied the prosecutor's request.
 {¶ 26} Later, the prosecutor exercised a peremptory challenge against the juror, seeking to exclude him because he had emphatically conveyed that he did not want to serve on the jury, and because he had several relatives who had been convicted of crimes. Defense counsel objected on the basis of Batson. The trial court accepted the prosecutor's reasons as race-neutral and concluded that Bailey had not demonstrated that the challenge was racially motivated.
 {¶ 27} The fact that a prospective juror's family member has been convicted of the same offense charged against the defendant can serve as a race-neutral explanation.[15] Additionally, we hold that a prospective juror's emphatic and repeated assertion that he does not want to serve on the jury can serve as a race-neutral explanation. We give great deference to the trial court's findings with respect to the prosecutor's lack of discriminatory intent, because the trial court was in the better position to evaluate the credibility of the proponent of the peremptory challenge.[16]
 {¶ 28} The trial court offered an additional race-neutral reason to exclude the juror: the juror was familiar with Bailey. The court should not have articulated a *Page 10 
separate race-neutral reason to support the exclusion because, in doing so, the court undermined Batson's emphasis on evaluating the state's purpose. But the reasons given by the state were supported by the evidence and were race-neutral. Therefore, we hold the trial court did not err in overruling Bailey's Batson challenge.
 III. Sufficiency and Weight of the Evidence {¶ 29} In his fifth and sixth assignments of error, Bailey challenges the weight and the sufficiency of the evidence to support his conviction. In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt.[17] In a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[18]
 A. Aggravated Robbery with a Firearm Specification andRobbery {¶ 30} Bailey concedes that the state presented sufficient evidence that La Don had robbed Bush at gunpoint and threatened to harm her, but he challenges the sufficiency of the evidence to prove that he had aided and abetted La Don in carrying out the robbery.
 {¶ 31} To establish that Bailey had acted as an aider and abetter, the state was required to prove that Bailey had assisted, encouraged, cooperated with, advised, or incited La Don in the commission of the aggravated robbery and the robbery.[19] *Page 11 
 {¶ 32} Bush testified that Bailey had entered the store shortly before La Don, and that after La Don had entered and threatened her with a gun, Bailey came behind the counter and took all the large bills out of her cash register and fled. La Don grabbed the remaining bills, some change, and a bag of marijuana. After viewing this evidence in the light most favorable to the state, we hold that the state presented sufficient evidence to support a finding that Bailey had aided and abetted La Don in carrying out the offenses.
 {¶ 33} Next, we review Bailey's claim that his robbery convictions were against the manifest weight of the evidence. He argues that his testimony demonstrated that he was merely responding to commands to hand the money to La Don. But Bush testified that Bailey was not ordered to hand the money to La Don, and that Bailey, in fact, did not hand the money to La Don; rather, he took the money for himself and ran out of the store. The jury was free to believe Bush and to disbelieve Bailey.
 {¶ 34} Where Bailey's credibility was severely impeached by his prior inconsistent statements to the police and his felony record, we cannot say that the jury lost its way in evaluating the credibility of the witnesses and resolving the conflicts in the evidence on the robbery offenses.
 B. Having a Weapon Under a Disability {¶ 35} Bailey also challenges the sufficiency and the weight of the evidence to support his conviction for having a weapon under a disability. The indictment and the bill of particulars charged Bailey under R.C. 2923.13(A)(2) with "possessing" a firearm on June 9, 2005, at 12:15 a.m., while under indictment for aggravated robbery. *Page 12 
 {¶ 36} Possession of a firearm can be either actual or constructive.[20] In this case, the state proceeded against Bailey for constructively possessing the firearm when the police confronted him in his uncle's apartment. Courts have defined constructive possession as knowingly exercising dominion and control over an object, even though the object is not within the person's immediate physical possession.[21]
 {¶ 37} The evidence at trial demonstrated that on June 9, 2005, at 12:15 a.m., Bailey was under indictment for aggravated robbery and that the police found an operable firearm in a closet at the residence of Bailey's uncle. When the police discovered the firearm, both Bailey and his uncle were in the apartment. But Bailey was in proximity to the closet, and his uncle was not. Further, Bailey had been, by his own admission, in the closet moments before the police located the firearm.
 {¶ 38} Bailey testified that he did not know that the firearm was in the closet and that he had not put it there. But Bailey's hands tested positive for gunshot residue. This evidence supported the state's theory that Bailey had hidden the firearm in the closet when he heard the police knocking at the door.
 {¶ 39} After reviewing this evidence in the light most favorable to the state, we hold that the state presented sufficient evidence that Bailey had access to the firearm and control over it, and, thus, that he had constructively possessed the firearm while under a disability.
 {¶ 40} We also reject Bailey's assertion that his weapon-under-disability conviction was against the manifest weight of the evidence. The jury was free to *Page 13 
disbelieve Bailey's testimony and to reject Bailey's criticisms of the state's evidence. Based upon our review of the record, we are not convinced that the jury lost its way and created a manifest miscarriage of justice.
 IV. Confrontation Clause and Fair-Trial Rights {¶ 41} In his third assignment of error, Bailey challenges his conviction for having a weapon under a disability on the basis that his Confrontation Clause rights were violated. He claims that the state was able to present to the jury the testimonial statements of the woman who had flagged down the officers investigating the radio call about shots fired, even though she did not testify at trial and had not been subject to cross-examination.
 {¶ 42} Bailey's fourth assignment of error alleges that this Confrontation Clause violation was exacerbated by prosecutorial misconduct, during opening statement and closing argument, concerning the same testimonial statements, and that the combined effect of these Confrontation Clause errors denied him a fair trial.
 {¶ 43} The Confrontation Clause of the Sixth Amendment to the United States Constitution bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."[22] A testimonial statement for Confrontation Clause purposes includes a statement made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[23] *Page 14 
 {¶ 44} The Confrontation Clause proscriptions apply only to a "witness" as historically defined: one who "bear[s] testimony" against the accused and thus makes "a declaration or affirmation * * * for the purpose of establishing or proving some fact."[24] If a statement is nontestimonial hearsay, then it is exempted from Confrontation Clause scrutiny, but its admission is subject to the substantive rules of evidence.[25] Bailey has not assigned as error the application of these evidentiary rules to the statements we scrutinize here.
 {¶ 45} In distinguishing between testimonial and nontestimonial statements, the Ohio Supreme Court has held that "courts should focus on the expectation of the declarant at the time of making the statement."[26] Thus, the court has adopted an "objective witness" test. The intent of the questioner is "is relevant only if it could affect a reasonable declarant's expectations."[27]
 {¶ 46} Witnesses' responses to interrogations by law enforcement officers and their substitutes generally are considered to be testimonial.[28] But there are exceptions. In the companion casesDavis v. Washington and Hammon v. Indiana,[29] the United States Supreme Court has provided additional guidance for determining whether a statement made in response to police interrogation is testimonial forSixth Amendment purposes.
 {¶ 47} In Davis, the Court reviewed a 911 telephone caller's responses to interrogation by a 911 operator.[30] The Court held that the present-tense statements *Page 15 
of the declarant who was in immediate danger and seeking aid were non-testimonial.[31] Thus, the defendant's Confrontation Clause rights were not violated when the 911 statements were used at trial, even though the declarant did not testify and had not been subject to cross-examination.
 {¶ 48} Conversely, in Hammond, the Court held that a victim's statements to the police during the initial inquiry into domestic-violence allegations were testimonial where the declarant was removed from danger and relaying a "narrative of past events."[32]
Importantly, this declarant's statements were not "a cry for help" or the "provision of information enabling officers immediately to end a threatening situation."[33] Rather, the declarant had actually executed an affidavit, at the request of a police officer, "to establish events that had previously occurred."[34]
 {¶ 49} After considering the facts and the relevant law, we reject Bailey's claim that his conviction for having a weapon under a disability must be vacated due to a Confrontation Clause violation.
 {¶ 50} In this case, the police officers testified that when they responded to a radio call about shots fired in the 1600 block of Westwood Avenue, a woman frantically flagged them down. The trial court did not allow the officers to specifically repeat what the woman had told them, but the officers were able to convey to the jury that she had provided them with information about the shooter, including a description of what he was wearing and where he might be located. The record demonstrates that she made these statements to get aid from the police and to help the police in an emergency situation — locating a man in the dark of night who *Page 16 
was armed and who had already fired a weapon. Therefore, her statements were nontestimonial, and the police officers' circumspect conveyance of these statements to the jury did not violate Bailey's constitutional right to confront the witnesses against him.[35]
 {¶ 51} We also reject Bailey's claim that he was denied a fair trial by the state's use of the woman's statements during the direct examination of the officers and by the state's references to the statements during opening statement and closing argument. This claim also fails because the statements were nontestimonial. Thus, Bailey has not demonstrated that he was denied a fair trial by the state's reference to any testimonial statements presented in violation of his Confrontation Clause rights.[36]
 {¶ 52} Accordingly, we overrule the third and fourth assignments of error.
 V. Unconstitutional Sentencing Statutes {¶ 53} In his eighth assignment of error, Bailey claims that the trial court erred when it sentenced him under unconstitutional statutes. In the case numbered B-0504953, the trial court sentenced Bailey to eight years of incarceration for the aggravated robbery to be followed by three years of incarceration for the accompanying firearm specification. The court also sentenced Bailey to six years of incarceration for the robbery, to be served concurrently with the aggravated-robbery sentence. In the case numbered B-0505675, the trial court sentenced Bailey to four years of incarceration for having a weapon under a disability and made this sentence *Page 17 
consecutive to the sentence imposed for the aggravated robbery. The aggregate term of incarceration was 15 years.
 {¶ 54} The trial court imposed more than minimum sentences on all three counts, in reliance on R.C. 2929.14(B). The trial court relied upon R.C. 2929.14(E)(4) when it ordered a consecutive sentence.
 {¶ 55} Bailey was sentenced shortly before the Ohio Supreme Court held that both R.C. 2929.14(B) and R.C. 2929.14(E)(4) were unconstitutional in State v. Foster.[37] Because Bailey was sentenced under unconstitutional provisions, we vacate his sentence in all but one regard and remand this case for resentencing.[38] His sentence for the firearm specification is not affected by our holding and remains intact.[39] Accordingly, we sustain the eighth assignment of error in part.
 VI. Punitive Sentencing {¶ 56} In his seventh assignment of error, Bailey argues that the trial court punished him for exercising his constitutional right to a jury trial instead of entering into a plea agreement. He claims that this punishment is reflected in an augmented sentence.
 {¶ 57} A criminal defendant is guaranteed the right to a jury trial and should not be punished for exercising that right or refusing to plead guilty.[40]
 {¶ 58} Where the record shows that (1) the trial court engaged in plea or sentence bargaining, (2) a tentative sentence was discussed, and (3) a harsher sentence followed a breakdown in negotiations, there is a presumption that the *Page 18 
harsher sentence was a result of the defendant's failure to plead guilty.[41] To overcome this presumption, the record must demonstrate that the trial court gave no improper weight to the defendant's failure to plead guilty.[42] It must "affirmatively show that the court sentenced the defendant solely on the facts of his case and his personal history — not as punishment for asserting his right to a jury trial."[43]
 {¶ 59} We have vacated Bailey's sentence for the most part, so our review under this assignment of error is limited to whether the trial court's imposition of a three-year term of incarceration for the firearm specification was punitive. Where the trial court was required to impose a three-year term of incarceration for the firearm specification,[44]
this sentence could not be punitive. Thus, we overrule the assignment of error.
 {¶ 60} Accordingly, having sustained Bailey's eighth assignment of error in part, we vacate his sentences for aggravated robbery, robbery, and having a weapon under a disability, and we remand the case for resentencing on these offenses consistent with Foster. In all other respects, we affirm the judgment of the trial court.
Judgment affirmed in part, sentences vacated in part, and cause remanded.
SUNDERMANN, P. J., CUNNINGHAM and DlNKELACKER, JJ.
[1] Appeal number C-060091.
[2] Appeal number C-060089.
[3] See State v. Schaim, 65 Ohio St.3d 51, 59, 1992-Ohio-31,600 N.E.2d 661.
[4] See State v. Hamblin (1988), 37 Ohio St.3d 153, 158-159,524 N.E.2d 476.
[5] State v. Allen, 1st Dist. Nos. C-050010 and C-050011,2006-Ohio-2338 at ¶ 21.
[6] Id.
[7] State v. Brooks (1989), 44 Ohio St.3d 185, 542 N.E.2d 636; see, also, State v. Echols (1998), 128 Ohio App.3d 677, 695,716 N.E.2d 728.
[8] (1986), 476 U.S. 79, 106 S.Ct. 1712.
[9] Id. at 96-97.
[10] Id. at 97-98.
[11] Id. at 98.
[12] See State v. White, 85 Ohio St.3d 433, 437, 1999-Ohio-281,709 N.E.2d 140.
[13] Id.
[14] See State v. Hernandez (1992), 63 Ohio St.3d 577, 583,589 N.E.2d 1310, following Hernandez v. New York (1991), 500 U.S. 352,111 S.Ct. 1859.
[15] See State v. Terry, 1st Dist. No. C-040261, 2005-Ohio-4140, at ¶ 53, reversed on other grounds, In re Ohio Crim. Sentencing StatutesCases, 109 Ohio St.3d 313, 2006-Ohio-2109, 847 N.E.2d 1174.
[16] See State v. Gowdy, 88 Ohio St.3d 387, 393-394, 2000-Ohio-355,727 N.E.2d 579, citing Hernandez v. New York, supra, at 356,111 S.Ct. 1859.
[17] See State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[18] See State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[19] R.C. 2923.03(A)(2); State v. Johnson, 93 Ohio St.3d 240,2001-Ohio-1336, 754 N.E.2d 796, syllabus.
[20] See State v. Messer (1995), 107 Ohio App.3d 51,667 N.E.2d 1022.
[21] See State v. Brooks, 9th Dist. No. 23236, 2007-Ohio-506, at ¶ 23, citing State v. Hankerson (1982), 70 Ohio St.2d 87,434 N.E.2d 1362, syllabus.
[22] See Crawford v. Washington (2004), 541 U.S. 36, 53-54,124 S.Ct. 1354.
[23] Id. at 52.
[24] Id. at 51 (quotation omitted).
[25] Id. at 68.
[26] State v. Stahl, 111 Ohio St.3d 186, 2006-Ohio-5482,855 N.E.2d 834, at ¶ 36.
[27] Id.
[28] Crawford, 541 U.S. at 53; State v. Lewis, 1st Dist. Nos. C-050989 and C-060010, 2007-Ohio-1485.
[29] (2006), ___ U.S. ___, 126 S.Ct. 2266.
[30] Id. at ___, 126 S.Ct. at 2270-71.
[31] Id. at, 126 S.Ct. at 2276-77 and 2279.
[32] Id. at, 126 S.Ct. at 2279.
[33] Id. at, 126 S.Ct. at 2279.
[34] Id. at, 126 S.Ct. at 2279.
[35] See id. at ___, 126 S.Ct. at 2276-77.
[36] See State v. Smith (1983), 14 Ohio St.3d 13, 14,470 N.E.2d 883.
[37] 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraphs one and three of the syllabus.
[38] Id. at 1104.
[39] See State v. Evans, Ohio St.3d, 2007-Ohio-861, ¶ 16-17.
[40] See State v. O'Dell (1989), 45 Ohio St.3d 140, 543 N.E.2d 1220, paragraph two of the syllabus.
[41] See State v. Stafford, 158 Ohio App.3d 509, 2004-Ohio-3893, at ¶ 15.
[42] Id.
[43] Id.
[44] R.C. 2929.14(D)(1)(a)(ii). *Page 1