DECISION AND JUDGMENT ENTRY
{¶ 1} In these consolidated cases, a Scioto County jury found Keith Whitaker guilty of one count of failure to appear and two counts of having weapons while under disability. The latter two counts stemmed from separate incidents where searches of Whitaker's vehicle produced firearms.
 {¶ 2} First, Whitaker argues that the trial court abused its discretion in denying his morning-of-trial request for substitute appointed counsel. Because the record does not show the grounds for any complaint other than Whitaker's vague and belated allegation that his appointed counsel had "betrayed the bre[a]ch of confidentiality," we cannot say that the trial court abused its discretion in denying his request for replacement counsel. *Page 2 
 {¶ 3} Second, Whitaker argues that one of the counts of having weapons while under disability is not supported by sufficient evidence that he knowingly possessed the firearm. He contends that it is at least equally likely that the gun belonged to his passenger. However, the State presented evidence that Whitaker had possession of the car in which police found a rifle concealed under a coat and that, upon being stopped by police, Whitaker slumped down in his seat in a manner that it appeared to police he might be concealing something. The State also presented evidence that the weapon was readily accessible in the backseat, that the rifle was operable, and that Whitaker had qualifying prior convictions. When this evidence is viewed in a light most favorable to the State, a reasonable jury could have found the essential elements of the crime proven beyond a reasonable doubt. Thus, sufficient evidence supports his conviction for having weapons while under a disability.
 {¶ 4} Third, Whitaker argues that the trial court committed plain error by failing to sua sponte grant a mistrial or give a curative instruction after one of the State's witnesses commented on Whitaker's invocation of his Fifth Amendment right to remain silent. Also, he argues that trial counsel was ineffective for failing to object to this testimony. Because the prosecution violated Whitaker's constitutional rights when it elicited testimony that he "did not want to incriminate himself," and because the evidence of guilt related to this count is not overwhelming, we conclude that the trial court committed plain error in failing to give curative instructions. Accordingly, we reverse Whitaker's conviction for having the handgun while under disability and remand that case for a new trial. *Page 3 
 I. Facts {¶ 5} On May 11, 2006, Scioto County Sherriff s Deputy Matt Spencer stopped a car driven by Whitaker after witnessing a traffic violation. On approaching the car, Deputy Spencer could no longer see the occupants of the vehicle because they appeared to be "ducked down." After observing this action and upon seeing the handle of a knife stuck between the driver's seat and the console, Deputy Spencer believed Whitaker was "possibly hiding something." After determining that Whitaker's driver's license had been suspended, Deputy Spencer placed Whitaker in the back of his cruiser. Before recovering the knife, Deputy Spencer learned from the car's passenger that there was a gun under a coat in the back of the car. Upon finding a 30/30 Marlin rifle under the coat, Deputy Spencer placed Whitaker under arrest. The State indicted Whitaker for having weapons while under disability, a violation of R.C. 2923.13(A) (3) and a third-degree felony.
 {¶ 6} On October 14, 2006, Portsmouth Police Officers Marty Eveland and Lee Bower responded to a call reporting a suspicious pickup truck in the parking lot of a convenience store. As Bower approached Whitaker, he observed Whitaker "lean[ ] back in the [truck] and [do] something and g[e]t back out and turn[ ] around and face[ ] me." Whitaker told Officer Bower that he was feeding his dog a doughnut, but Officer Bower believed that Whitaker acted "nervous." Whitaker explained that he was concerned about his dog. After obtaining Whitaker's consent to search the truck, Officer Bower found a .45 caliber handgun on the floor behind the seat. The trial court continued his previous recognizance bond after the State indicted Whitaker for having *Page 4 
weapons while under disability, a violation of R.C. 2923.13(A) (2) and (3) and a third-degree felony.
 {¶ 7} The trial court set a pre-trial hearing on these two charges for January 5, 2007. However, Whitaker did not attend this hearing. Because a condition of his bond was that he attend all hearings involving his case, the trial court issued a bench warrant for his arrest. The State indicted Whitaker for failure to appear, a violation of R.C. 2937.29 and a fourth-degree felony. On the State's motion, the trial court consolidated these three charges.
 {¶ 8} On the morning of trial, Whitaker requested that the trial court appoint new counsel for him. Whitaker's appointed counsel explained there had been a break-down in communication and that Whitaker refused to see her on the two days prior to trial. Whitaker told the court that he could not "trust someone that has betrayed the bre[a]ch of confidentiality." Although it is not clear from the record how Whitaker's attorney breached her duty of confidentiality, apparently she spoke to Whitaker's son. The trial court characterized Whitaker's argument as "ridiculous," "preposterous," and "outrageous." Whitaker also alleged that his attorney had betrayed his trust by failing to subpoena witnesses on his behalf. However, his attorney explained that she did not know that he had sent her a list of witnesses; instead, she had understood that he wanted her to copy and mail some documents for him, and the witness list was on the back of one of these documents. The court noted that this case had been on the docket for a year, explained that his current attorney was competent and zealous, and denied his request. *Page 5 
 {¶ 9} At trial, the evidence indicated neither the car nor the gun were registered in Whitaker's name, and Deputy Spencer testified that he did not know whether the rifle belonged to Whitaker or whether Whitaker knew that the rifle was in the car. The passenger, Angela Trapp, did not testify. Whitaker testified on his own behalf and denied owning or possessing either of the firearms found by police. He testified that "there was a girl there that had been having trouble with her boyfriend, * * * got a bunch of stuff, and she was leaving her car at my house * * * and she said `can I put a few things in your car * * * so that way if he shows up he won't steal it.' I understood that she was putting sleeping bags, clothes, a radio in there * * *." Whitaker explained that he had a deal to get the car, but he testified that he did not own it at the time. He denied owning the rifle found in the car, and stated that he had only been driving the car "very briefly." Whitaker, who appeared at trial with a walker, testified that he had been unable to fully inspect any items in the car put there either by the owner or his passenger because he was not physically able to do so. He also admitted that he had bent over after being stopped by Deputy Spencer, but he explained that he had been reaching for his cigarettes. The passenger had moved to Florida. According to Whitaker, she had promised to come back and take responsibility for the gun and had told Whitaker that the gun belonged to her boyfriend. However, Whitaker testified that he had lost contact with her and that the police would not produce her name for him.
 {¶ 10} Whitaker also addressed the events that occurred outside the convenience store where the police found the loaded handgun in his pickup. He testified that he and his dog had been driving around, eating doughnuts, and drinking coffee when he got a call on his cell phone. He pulled into the convenience store *Page 6 
parking lot so that he would not spill his coffee while talking on the phone and feeding the dog doughnuts. Whitaker testified that the pickup belonged to his son, but admitted that he had made arrangements to acquire it. He also explained that he had not yet had time to fully inspect the items in the truck before the police searched it, and he denied owning the handgun. Whitaker alleged that the police had been looking for reasons to send him back to prison and that his sons also wanted him back in prison so that they could steal money from Whitaker's mother. Although Whitaker testified that he could "not say that one did anything to really set me up," he suggested that there were people with access to his truck who could have put the handgun there without his knowledge.
 {¶ 11} Whitaker explained that he had missed the pre-trial hearing for health reasons. He testified that he had a heart-procedure performed the day before the scheduled hearing, but he had understood from his doctor that he was to stay in bed for two days. However, on cross-examination, Whitaker admitted that he did not appear in court for two months after the hearing and before the police arrested him on the bench warrant.
 {¶ 12} The jury found Whitaker guilty on each charge. After the trial court sentenced him to eleven years in prison, Whitaker filed this appeal.
 II. Assignments of Error {¶ 13} Whitaker presents three assignments of error:
 1. "The trial court committed an abuse of discretion by denying appellant[']s request to obtain new counsel."
 2. "The evidence is constitutionally insufficient to sustain the appellant's convictions of carrying a concealed weapon[1] and having a weapon while under disability." *Page 7 
 3. "The trial court erred and violated appellant's Fifth Amendment rights in permitting the state to elicit testimony about appellant's post-arrest silence, and counsel was ineffective in failing to object to that testimony."
 III. Request for New Counsel {¶ 14} In his first assignment of error, Whitaker argues that the trial court erred in denying his motion to discharge his court-appointed counsel and to have her replaced with "proper counsel." The trial court, in denying this motion, gave him the choice of continuing with current counsel or proceeding pro se.
 {¶ 15} "To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel.'" State v. Ketterer, 111 Ohio St.3d 70, 2006-Ohio-5283,855 N.E.2d 48, at ¶ 149, quoting State v. Coleman (1988), 37 Ohio St.3d 286,525 N.E.2d 792, paragraph four of the syllabus. We review the trial court's decision regarding the substitution of counsel for the abuse of discretion. Id.; Coleman, 37 Ohio St.3d at 292.
 {¶ 16} We cannot say that the trial court abused its discretion in denying Whitaker's motion for substitute counsel. Here, Whitaker waited until the morning of trial to request new trial counsel, although the record suggests that Whitaker was aware of the basis for this motion weeks before trial. We recognize that his trial counsel admitted that there had been a break-down in communication and that she was concerned about her ability to zealously represent him during the trial if he did not speak to her. However, it was Whitaker who refused to talk to her, and the record does not adequately demonstrate his reasons for doing so. Although Whitaker complained of a breach of confidentiality by trial counsel, we cannot tell from the record exactly what *Page 8 
Whitaker's attorney did and whether Whitaker's complaint was reasonable. The trial court deemed Whitaker's sense of betrayal to be "ridiculous." Whitaker also argued that he could not trust his trial counsel because she had failed to subpoena witnesses on his behalf. However, trial counsel explained that Whitaker had never told her that he would be sending her a list of witnesses and that she did not realize the list was on the back of a document he had asked her to photocopy for him. There is nothing in the record that contradicts this explanation, nor is there anything in the record that suggests who Whitaker's potential witnesses were and whether it would have been unreasonable for counsel to fail to subpoena these witnesses.
 {¶ 17} Because the record does not show that Whitaker's complaints against his court-appointed attorney were reasonable or that there was such a break-down of the attorney-client relationship so as to jeopardize his right to the effective assistance of counsel, we cannot conclude that the trial court abused its discretion in denying his motion for substituted counsel on the morning of trial. Kettererat ¶ 149, ("If the complaint is unreasonable, the trial court may `require the trial to proceed with assigned counsel participating.'" (quotingState v. Deal (1969), 17 Ohio St.2d 17, 244 N.E.2d 742, syllabus));Coleman, 37 Ohio St.3d at 292; see, also, State v. Hibbler, Clark App. No. 2001-CA-43, 2002-Ohio-4464, at ¶ 11 ("`[T]he refusal to replace an appointed attorney is not an abuse of discretion when the request is made at the last minute prior to trial and adequate reasons for the request are not set out in the record.'" (quoting State v. Harper
(1988), 47 Ohio App.3d 109, 113, 547 N.E.2d 395)). Accordingly, we overrule his first assignment of error. *Page 9 
 IV. Sufficiency of the Evidence {¶ 18} In his second assignment of error, Whitaker argues that insufficient evidence supports his conviction for having weapons while under disability stemming from his possession of the rifle on May 11, 2006.
 {¶ 19} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v.Virginia (1979), 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560; State v.McGhee, Lawrence App. No. 04CA15, 2005-Ohio-1585, at ¶ 57. The Court's evaluation of the sufficiency of the evidence raises a question of law and does not permit the Court to weigh the evidence. State v.Simms, 165 Ohio App.3d 83, 2005-Ohio-5681, 844 N.E.2d 1212, at ¶ 9, citing State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717).
 {¶ 20} The State charged Whitaker with violating R.C. 2923.13(A)(3), which provides:
 Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
 * * *
 The person is under indictment for or has been convicted of any offense *Page 10 
involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *
Whitaker did not establish that he had been relieved from disability as provided in R.C. 2923.14. See State v. Brooks, Cuyahoga App. No. 83668,2005-Ohio-3567, ¶ 28 (holding that being relieved from disability is an affirmative defense), reversed on other grounds by In re Ohio CriminalSentencing Statutes Cases, 109 Ohio St.3d 313, 2006-Ohio-2109,847 N.E.2d 1174; State v. Holloway (Feb 13, 1998), Hamilton App. No. C-970067, 1998 WL 57793 (same); State v. Gibson (1993),89 Ohio App.3d 188, 623 N.E.2d 1266, paragraph four of the syllabus ("Not being relieved from disability is not element of conviction for having weapons while under disability which must be proven by state, but is affirmative defense that may be asserted by defendant."). The State presented Whitaker's prior conviction for Illegal Processing of Drug Documents, and Deputy Spencer testified that he test fired the rifle and that it was operable. Whitaker raises no issue with these elements of the offense.
 {¶ 21} Instead, Whitaker relies on the Eighth District's decision inState v. Duganitz (1991), 76 Ohio App.3d 363, 601 N.E.2d 642, for the proposition that the State failed to prove beyond a reasonable doubt that he knowingly possessed the rifle found underneath coat in the back of the car. In particular, Whitaker contends that the "[t]here is no way to exclude the passenger of the vehicle as the party in possession. There is no way[ ] by reasonable inference to find beyond a reasonable doubt that Mr. Whitaker knowingly possessed this gun." Whitaker points out that the only evidence in the record of anyone having knowledge of the rifle in the car is the passenger's statement to Deputy Spencer that there was a "loaded firearm, she actually said gun that was hidden underneath a coat in the back seat." He emphasizes that she had knowledge of the rifle *Page 11 
and of the fact that it was loaded. Whitaker also notes that there is no evidence in the record linking Whitaker to the rifle. The rifle was not registered to Whitaker, the State did not present evidence of any scientific tests showing that Whitaker had held or used the rifle, Deputy Spencer testified that he did not know whether the rifle belonged to Whitaker, and Whitaker himself denied ever possessing it.
 {¶ 22} In Duganitz, after the police stopped the defendant's car, the defendant abruptly jumped out of it. The officer ordered the defendant to freeze and the passenger of the car to place his hands on the dashboard. However, as the officer placed the defendant in the back of the cruiser, he did not watch the passenger in the car. Upon removing the passenger to the back of the cruiser, the officer found a loaded handgun underneath an afghan on the front seat of the car and to the right of where the defendant had been sitting. The Eighth District reversed the defendant's conviction for carrying a concealed weapon because the evidence did not prove beyond a reasonable doubt that the defendant had knowingly possessed the handgun. The court explained that "[i]t is a competing construction of the evidence, which is just as plausible, that the passenger had the weapon and the appellant had no knowledge of it."
 {¶ 23} However, we believe that the State produced sufficient evidence to allow the case to proceed to the jury. The evidence shows that Whitaker made furtive movements immediately after being stopped by Deputy Spencer. Deputy Spencer testified that, as he approached the vehicle, Whitaker had "ducked down" in the car, and he explained that these actions, in addition to the presence of the knife, suggested to him that Whitaker was hiding something. When viewed in a light most favorable to the prosecution, these furtive movements could help prove beyond a reasonable doubt that *Page 12 
Whitaker knew that the rifle was in the car. See State v. Harris, Cuyahoga App. No. 88765, 2007-Ohio-3916, at ¶ 14 (noting in a having weapons while under disability case that furtive movements can suggest "guilty knowledge"); State v. Tisdel, Cuyahoga App. No. 87516,2006-Ohio-6763, at ¶ 34 (holding evidence sufficient to support charge of having weapons while under disability where the police officer testified that he observed the defendant making furtive movements that suggested that the defendant had attempted to shove something under his seat, and the officer found a firearm under the defendant's seat);State v. Young (Mar. 8 2000), Summit App. No. CA19353, 2000 WL 254893
(holding that sufficient evidence supported possession of a concealed weapon charge where the defendant made "furtive movements, apparently attempting to conceal something.").
 {¶ 24} There is also sufficient evidence that Whitaker had possession of the rifle. R.C. 2923.13 provides that no person who has been convicted of a felony offense of violence "shall knowingly acquire, have, carry or use any firearm or dangerous ordnance" unless the person has been relieved from disability pursuant to R.C. 2923.14. Constructive possession can be sufficient to support a charge of having weapons while under a disability. State v. Cherry, 171 Ohio App.3d 375,2007-Ohio-2133, 870 N.E.2d 808, at ¶ 10; State v. Pitts, Scioto App. No. 99CA2675, 2000-Ohio-1986 ("In order to `have' a firearm within the meaning of R.C. 2923.13(A), a person must have actual or constructive possession of it."). "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." State v.Wolery (1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351. "Thus, possession of a firearm in violation of R.C. 2923.13 may *Page 13 
be inferred when the defendant has exercised dominion and control over the area where the firearm was found." Pitts, supra; see, also,State v. Dorsey, Franklin App. No. 04AP-737, 2005-Ohio-2334, at ¶ 32 ("Constructive possession of a firearm exists when a defendant knowingly has the power and intention at any given time to exercise dominion and control over a firearm, either directly or through others." (citingUnited States v. Clemis (C.A. 6, 1993), 11 F.3d 597)).
 {¶ 25} Whitaker had dominion and control over the area where the rifle was found, as the rifle was in the back seat of the car that he was driving and he admitted possessing the car for some time before Deputy Spencer stopped him. Deputy Spencer testified that he found the rifle under a coat and easily accessible to Whitaker in the front seat, and Deputy Spencer showed the jury how Whitaker could have reached the rifle while remaining out of sight and without getting out of his seat. Furthermore, the State admitted the firearm into evidence, and the jury could reasonably conclude that, given its size and shape, Whitaker knew that the firearm was present in the car. Thus, the State presented sufficient evidence that Whitaker knowingly possessed the rifle and, therefore, that he violated R.C. 2923.13. Accordingly, we overrule his second assignment of error.
 V. The Right to Remain Silent {¶ 26} In his third assignment of error, Whitaker argues that the trial court committed plain error in failing to give a curative instruction or to grant a mistrial after Officer Bower commented on Whitaker's statement that he "didn't want to incriminate himself." Alternatively, Whitaker argues that his trial counsel was ineffective for failing to object Officer's Bower's testimony. *Page 14 
 {¶ 27} Because Whitaker did not object to Officer Bower's statement at trial, we are limited to plain error review. See State v. Hill,92 Ohio St.3d 191, 202, 2001-Ohio-141, 749 N.E.2d 274 (reviewing for plain error whether the State improperly introduced evidence and commented on appellee's invocation of his right to remain silent); State v.Estepp, Miami App. No. 2006CA22, 2007-Ohio-2596, at ¶ 31 (reviewing comment on the defendant's pre-arrest, pre-Miranda silence for plain error). Under Crim. R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." A defendant has the burden to satisfy the plain-error rule, and a reviewing court may consult the whole record when considering the effect of any error on substantial rights.United States v. Vonn (2002), 535 U.S. 55, 59, 122 S. Ct. 1043,152 L.Ed.2d 90; State v. Davis, Highland App. No. 06CA21, 2007-Ohio-3944, at ¶ 22.
 {¶ 28} For a reviewing court to find plain error, the following three conditions must exist: (1) an error in the proceedings; (2) the error must be plain, i.e., the error must be an "obvious" defect in the trial proceedings; and (3) the error must have affected "substantial rights," i.e., the trial court's error must have affected the outcome of the trial. State v. Noling, 98 Ohio St.3d 44, 56, 2002-Ohio-7044,781 N.E.2d 88; State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68,759 N.E.2d 1240; State v. Sanders, 92 Ohio St.3d 245, 257, 2001-Ohio-189,750 N.E.2d 90; Hill, 92 Ohio St.3d at 200. Furthermore, the Supreme Court of Ohio has stated that Crim. R. 52(B) is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990), 53 Ohio St.3d 107,111, 559 N.E.2d 710; see, also, State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, *Page 15 
paragraph three of the syllabus ("The plain error rule should be applied with caution and should be invoked only to avoid a clear miscarriage of justice."). A reviewing court should consider noticing plain error only if the error "`"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."'" Barnes, 94 Ohio St.3d at 27, quoting United States v. Olano (1993), 507 U.S. 725, 736,113 S. Ct. 1770, 123 L.Ed.2d 508, quoting in turn United States v. Atkinson (1936),297 U.S. 157, 160, 56 S. Ct. 391, 80 L.Ed. 555.
 {¶ 29} Whitaker argues that the trial court committed plain error "in permitting the state to elicit testimony about appellant's post-arrest silence" in violation of his Fifth Amendment right against self-incrimination. He relies on Doyle v. Ohio (1976), 426 U.S. 610,618, 96 S. Ct. 2240, 49 L.Ed.2d 91, Wainwright v. Greenfield (1986),474 U.S. 284, 291, 106 S. Ct. 634, 88 L.Ed.2d 623, and State v.Thompson (1987), 33 Ohio St.3d 1, 4, 514 N.E.2d 407, for the proposition that the State cannot use his invocation of his Fifth Amendment rights as substantive evidence of guilt in its case-in-chief.
 {¶ 30} Relying on In re T.S., Franklin App. 06AP-1163, 2007-Ohio-5085, the State argues that the holdings of the Supreme Court of the United States in Doyle and its progeny are not applicable where the record fails to affirmatively show that the defendant has been given Miranda warnings informing him of his right to remain silent. According toIn re T.S., "`"[a]bsent Miranda warnings, there is no government action which induces a defendant to remain silent with an assurance that his silence would not be used against him."'" In re T.S at ¶ 10, quotingState v. Exum, Franklin App. No. 05AP-894, 2007-Ohio-2648, at ¶ 38, quoting in turn State v. Price (Jan. 31, 1995), Franklin App. No. 94APA07-1012. However, the Tenth District's holding relied primarily *Page 16 
on Fletcher v. Weir (1982), 455 U.S. 603, 607, 102 S. Ct. 1309, which held that "[i]n the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to the post-arrest silence when a defendant chooses to take the stand." The State impeached the defendant with his silence in In re T.S.
 {¶ 31} Here, however, the State did not impeach Whitaker with his silence after Whitaker chose to take the stand. Instead, during the State's case-in-chief, on direct examination of a key State witness, the State introduced evidence that Whitaker affirmatively asserted his right to silence out of a fear of incriminating himself. The Supreme Court of Ohio has explained that
 [t]he use of pre-arrest silence for impeachment is distinguishable. When a defendant testifies at trial, the defendant has `cast aside his cloak of silence.' Jenkins [v. Anderson (1980)], 447 U.S. [231,] 238, 100 S. Ct. 2124, 65 L.Ed.2d 86. Thus, use of pre-arrest silence as impeachment evidence is permitted because it furthers the truthseeking process. Otherwise, a criminal defendant would be provided an opportunity to perjure himself at trial, and the state would be powerless to correct the record.
State v. Leach (2004), 102 Ohio St.3d 135, 2004-Ohio-2147,807 N.E.2d 335, at ¶ 33. In Leach, the court held that the State's "[u]se of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination." Id. at the syllabus. The court specifically rejected the argument that the defendant must be given Miranda warnings before the right to remain silent attaches, reasoning that "an accused's right to silence `is not derived from Miranda, but from the Fifth Amendment.'" Id. at ¶ 36, quoting State v. Leach, 150 Ohio App.3d 567, 2002-Ohio-6654,782 N.E.2d 631, at ¶ 32. *Page 17 
 {¶ 32} Although the Supreme Court of Ohio's decision in Leach
addressed whether the defendant's pre-arrest and pre-Miranda silence could be used substantively against the accused, we believe the court's reasoning applies even more strongly to a defendant's invocation of his Fifth Amendment rights while in custody but before receiving the Miranda warning. "To hold otherwise would encourage improper police tactics, as officers would have reason to delay administering Miranda warnings so that they might use the defendant's pre-arrest silence to encourage the jury to infer guilt." Leach at ¶ 31. Furthermore, allowing the State to use defendants' pre-Miranda silence against them "would force defendants either to permit the jury to infer guilt from their silence or surrender their right not to testify and take the stand to explain their prior silence." Id. Because the substantive use of Whitaker's pre-Miranda invocation of his right to silence undermines the very protections that the Fifth Amendment was designed to provide, we hold that substantive use of the defendant's post-arrest, pre-Miranda invocation of the right to silence in the prosecution's case-in-chief violates the Fifth Amendment as incorporated by the Fourteenth Amendment. Thus, we reject the State's argument that "the record must affirmatively show that Miranda warnings were given" before the right against self-incrimination attaches.
 {¶ 33} Nor do we agree with the State's argument that Whitaker's invocation of his right not to incriminate himself was not "`used against him' in the classic sense." Whitaker clearly invoked his Fifth Amendment right to remain silent. The jury heard that Whitaker did not "want to incriminate himself." We recognize that the State wisely chose not to emphasize Officer Bower's testimony, either on direct examination or during its closing statements. However, after Officer Bower's testimony, Whitaker had *Page 18 
"`effectively lost the right to silence. A "bell once rung, cannot be unrung."'" State v. Leach, 150 Ohio App.3d 567, 2002-Ohio-6654,782 N.E.2d 631, at ¶ 32, quoting State v. Easter (1996), 130 Wash.2d 228,238-39, 922 P.2d 1285, quoting in turn State v. Trickel (1976),16 Wash. App. 18, 30, 553 P.2d 139. "`References to prior silence in the presence of the jury inevitably precipitate the impermissible inference that a failure to deny an accusation of guilt, or assert it's contrary, is an admission of the accusation's truth.'" Id., quoting State v. Sabbah
(1982), 13 Ohio App.3d 124, 133, 468 N.E.2d 718. Thus, we believe that Whitaker had his decision to exercise his Fifth Amendment rights "used against him."
 {¶ 34} Next, the State argues that, because Officer Bower's reference to Whitaker's desire to remain silent was not responsive to the prosecutor's actual question, that reference was not actually elicited by the State. We recognize that Officer Bower's response was unresponsive:
 Mr. Kuhn: Can you describe his demeanor as this search was on-going[?]
 Officer Bower: He — of course once we found the firearm, we secured the firearm and secured Mr. Whitaker. At the Police Department I — we interviewed him. He admitted — there were Hydrocodone pills that we found in — between the two seats. He admitted to those. The spoon he said belonged to a female that was in the truck. And I asked him about the gun and he said he didn't want to incriminate himself, so we concluded the interview.
However, the prosecution made no effort to restrain Officer Bower's answer once his testimony digressed from Whitaker's demeanor at the time of the search to his interview at the Police Department. The State should have known from its preparation of its case that Whitaker had expressed his desire not to incriminate himself after being asked about the handgun. Thus, the State should have known when Officer Bower testified *Page 19 
about the interview and about "ask[ing Whitaker] about the gun" that Officer Bower was approaching forbidden territory. Yet the State did not attempt to redirect Officer Bower. Furthermore, the State had the responsibility to adequately instruct its witness not to mention that Whitaker had invoked the Fifth Amendment. See State v. Johnson (July 3, 1997), Lake App. No. 96-L-012, 1997 WL 401529 ("Hurst should have been instructed beforehand not to say anything about the fact that appellant refused to give a statement. The defendant's constitutional rights may not be ignored simply because the state neglects to prepare a crucial witness."). Yet there is no indication in the record that it did so. Accordingly, we do not hesitate to impute Officer Bower's unresponsive testimony to the State.
 {¶ 35} The State argues that Whitaker's trial counsel "opted to do the tactically intelligent thing and not draw attention to the issue" by objecting or moving for curative instructions. We recognize that a defendant may not rely on the plain error rule to evade the consequences of his own trial strategy. State v. C/aytor (1991),61 Ohio St.3d 234, 240, 574 N.E.2d 472 ("What appears to have been a tactical decision [not to request the lesser included offense in jury instructions] in this case during the trial cannot now be converted into judicial error."); State v. Noggle, 140 Ohio App.3d 733, 746, 2000-Ohio-1927,749 N.E.2d 309 ("[W]e note that plain error cannot be used to negate a deliberate, tactical decision by trial counsel."). Similarly, "debatable trial tactics do not constitute ineffective assistance of trial counsel." State v. Conway, 109 Ohio St.3d 412, 2006-Ohio-2815,848 N.E.2d 810, at ¶ 111. However, we cannot conclude that failing to request a curative instruction represents even a debatable trial strategy. We believe that Officer Bower's use of the word "incriminate" in referring to *Page 20 
Whitaker's invocation of his constitutional rights inevitably suggested to the jury that Whitaker had a guilty conscience, while a proper curative instruction would have allowed the jury to recognize that a suspect could exercise his right to remain silent for a variety of innocent reasons and that doing so does not create an inference of guilt. Thus, trial counsel's failure to object allowed Officer Bower's testimony to reach the jury uncontested and without the proper admonition from the trial court. There was no conceivable benefit to be derived from failing to object, and this inaction simply cannot be characterized as litigation strategy.
 {¶ 36} For these reasons, we must conclude that the trial court committed error in failing to address the State's evidence that Whitaker invoked his Fifth Amendment rights. However, we must still determine whether this error requires reversal, i.e., whether the State produced "overwhelming evidence" of the defendant's guilt. Leach at ¶ 38 ("Because the evidence of guilt was not overwhelming in this case, the admission of defendant's pre-arrest, pre-Miranda silence was clearly prejudicial.").
 {¶ 37} We cannot say that overwhelming evidence supports Whitaker's conviction for having the handgun while under disability. Here, Whitaker leaned into the car as the police approached him, and, according to Officer Bower, Whitaker appeared to be nervous. However, Whitaker admitted knowing that there were drugs and drug paraphernalia in the pickup, which could reasonably explain the nervousness. Police found the handgun behind the seat and out of plain view, and Officer Bower testified that the pickup was not registered in Whitaker's name at the time of the search. There was no scientific evidence connecting the handgun to Whitaker, nor was there testimony from any witness that Whitaker had been seen with it. This charge rested on *Page 21 
the jury's determination regarding which witnesses were most credible and there is a real probability that the jury may have been influenced by Whitaker's statement that he did not want to incriminate himself after being asked about this handgun. Accordingly, we believe the trial court's error was prejudicial and we reverse Whitaker's conviction for having a handgun while under disability.
 {¶ 38} Whitaker does not specifically argue that both convictions for having a weapon while under disability must be reversed because of Officer Bower's reference to his invocation of his Fifth Amendment rights. However, we will address whether this testimony so tainted Whitaker's conviction for having the rifle while under disability that that conviction must be reversed as well.
 {¶ 39} The two counts of having a weapon while under disability stemmed from wholly separate incidents in which searches by law enforcement officers uncovered weapons. An interval of five months separated these two incidents, and the facts underlying each charge were readily distinguishable. In the count involving the rifle, Whitaker was in a car accompanied by a female passenger, and a sheriff's deputy found the rifle under a coat in the car after the passenger told him of its existence. In the count involving the handgun, Whitaker had parked his pickup truck outside of a convenience store, and he had his dog with him. Two city police officers approached him and obtained consent for a search, and they found a handgun behind the seat. Thus, the two counts involved different arresting officers, different vehicles, different weapons, and different passengers. The evidence of each separate offense was simple and direct. Furthermore, sufficient, albeit not overwhelming, evidence supported each *Page 22 
count. Importantly, the statement invoking the right to silence occurred following Whitaker's arrest for possessing the handgun and related only to that charge.
 {¶ 40} Given that the evidence of each separate offense was distinctive, simple, direct, and sufficient, and given that the trial court instructed the jury that there were two separate counts of having a weapon while under disability, we do not believe that this conviction was tainted by Officer Bower's statement. See State v. Bailey, Hamilton App. Nos. C-060089 and C-060091, 2007-Ohio-2014, at ¶ 20 (holding that court did not err in refusing to sever separate count of the indictment where the evidence of each offense was simple and direct, the State did not argue that the two offenses were connected or probative of each other, and the trial court instructed the jury to consider each count separately). Thus, we do not believe that the jury was likely to be confused regarding the proof that Whitaker had a rifle while under disability and the proof that he had a handgun while under disability. Instead, we believe that the jury could reasonably be expected to separate out the facts related to each charge so that the count related to the handgun, which was tainted by Officer Bower's statement, did not taint the count related to the rifle. See State v. Roberts (1980),62 Ohio St.2d 170, 175, 405, N.E.2d 247 (explaining that the jury is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated). Therefore, we affirm Whitaker's conviction for having the rifle while under a disability.
 {¶ 41} Accordingly, we reverse the trial court's judgment in part and remand the having weapons while under disability charge involving the handgun to the trial court for a new trial. In all other regards, we affirm the judgment below.[2] *Page 23 
 JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED. *Page 24 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED. Appellant and Appellee shall split the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. McFarland, J.: Concur in Judgment and Opinion.
[1] It does not appear from the record that Whitaker was charged with carrying a concealed weapon.
[2] Because we hold that the trial court committed plain error, we need not determine whether trial counsel was ineffective in failing to request a curative instruction following Officer Bower's testimony. *Page 1