[Cite as *State v. Harper*, 2012-Ohio-4527.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
VINTON COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | Case No. 11CA684 |
| v. | : | |
| | : | DECISION AND |
| Jason A. Harper, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | Filed: September 27, 2012 |

_____

APPEARANCES:

Timothy Young, Ohio Public Defender, and Kristopher A. Haines, Assistant Ohio Public Defender, Columbus, Ohio, for Appellant.

Austin B. Campbell, Vinton County Prosecuting Attorney, McArthur, Ohio, for Appellee.
_____

Kline, J.:

{¶1}   Jason A. Harper appeals the judgment of the Vinton County Court of Common Pleas, which convicted Harper of aggravated robbery in violation of R.C. 2911.01(A)(1).  On appeal, Harper contends that he suffered ineffective assistance of counsel based on his trial counsel's failure to object to multiple violations of Harper's constitutional rights.  During trial, the state repeatedly used Harper's invocation of his right against self-incrimination as evidence of guilt.  Harper's trial counsel failed to object to these constitutional violations, and we conclude this constituted deficient performance.  And, we also conclude trial counsel's deficient performance prejudiced Harper because the constitutional violations pervaded the entire trial.  As a result, Harper must prevail on his ineffective-assistance-of-counsel claim.

{¶2}   Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.

I.

{¶3}   On November 9, 2009, an armed assailant robbed the Zaleski General Store.  The assailant wore a "ninja mask" that covered his entire face except for his eyes.  After the assailant forced the store's owner to give him money from the cash register, the assailant fled from the store.  The owner then retrieved her gun and went outside.  The owner saw the assailant get into a truck, and the owner shot at the front-driver's side tire of the truck.

{¶4}   Around the same time as the robbery, Darrell Corbin saw someone driving a truck erratically near the Zaleski General Store.  (Law enforcement later determined that the truck matched the description of the assailant's truck.)  The truck crashed into a guardrail.  An individual emerged from the truck and passed in front of Corbin.  The individual then fled into a forest near the scene of the crash.  Law enforcement officials searched for the assailant in the forest, but the search was unsuccessful.  Thus, the assailant remained at large.

{¶5}   About a week later, law enforcement officials received information from a confidential informant that implicated Harper in the robbery.  After receiving this information, law enforcement contacted Corbin.  Upon viewing a photo array, Corbin identified Harper as the individual who emerged from the truck on the day of the robbery.

{¶6}   Additionally, Curtis Bailey and Jennifer Davis informed law enforcement officials about statements Harper allegedly made when he visited their house during

November 2009. (Apparently, law enforcement suspected that Bailey and Harper were illegally selling weapons together. Also, Davis was Bailey's girlfriend.) Bailey and Davis claimed that Harper told them that he had robbed a convenience store in Zaleski.

{¶7} Eventually, Deputy Penny McCune of the Vinton County Sheriff's Office interviewed Harper at the Southeastern Ohio Regional Jail. Although the interview lasted several hours, much of it concerned details of Harper's personal life. Near the end of the interview, Deputy McCune asked Harper, "did you rob the Zaleski General Store November 9, 2009[?]" Trial Tr. at 157. Then, Deputy McCune testified as follows: "He became silent. He stared at me. And he said I cannot lie to you. I will not answer that question." *Id.*

{¶8} The state referenced Deputy McCune's testimony during opening and closing arguments. During opening argument, the prosecutor said, "So detective goes interviews Mr. Harper. Talks to him for several hours. Asked at the end she says well tell me did you I'm going to ask you [sic], did you rob that store and he says I won't lie to you. You know didn't deny it. Just says didn't say anything." Trial Tr. at 2. And during closing argument, the prosecutor said,

> Most importantly, at the end of the three hour or more
>
> interview she said listen Jason by the way tell me
>
> straight did you rob the store in Zaleski. He says
>
> didn't say no I didn't but he says I won't lie to you
>
> [sic]. I'm not going to answer. That ladies and
>
> gentlemen, silence in the face of an accusation is an

admission.  I I rate that about a nine on the guilt scale

[sic].  Trial Tr. at 221.

**{¶9}**  The jury found Harper guilty of aggravated robbery, and the trial court imposed an eight-year prison sentence upon Harper.  He appeals and asserts the following assignments of error: I. "The trial court committed reversible error when it improperly allowed Mr. Harper to proceed pro se during a critical stage of his trial court proceedings, in violation of Mr. Harper's Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution."  II. "The trial court committed reversible error when it allowed into evidence at Mr. Harper's trial the victim's unreliable, substantially prejudicial in-court identification of Mr. Harper, in violation of Mr. Harper's Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution."  III. "Mr. Harper was denied his right to confront the evidence against him at trial in violation of his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution."  IV. "The trial court committed reversible error and denied Mr. Harper a fair trial and due process of law when it allowed Mr. Harper's silence to be used against him at trial, in violation of Mr. Harper's Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution."  V. "The prosecutor's misconduct denied Mr. Harper a fair trial and due process of law, in violation of Mr. Harper's Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution."  And, VI. "Trial counsel rendered ineffective assistance of counsel in

violation of Mr. Harper's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution."

II.

{¶10}  We begin with Harper's sixth assignment of error because it is dispositive. In his sixth assignment of error, Harper argues that he suffered from ineffective assistance of counsel.  Harper's trial counsel did not object when the state used Harper's invocation of his right against self-incrimination as evidence of Harper's guilt. Harper contends that this amounted to ineffective assistance of counsel.

{¶11}  A criminal defendant has a constitutional right to counsel, which includes the right to the effective assistance from counsel.  *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).  "In Ohio, a properly licensed attorney is presumed competent and the appellant bears the burden to establish counsel's ineffectiveness."  *State v. Norman*, 4th Dist. Nos. 08CA3059 & 08CA3066, 2009-Ohio-5458, ¶ 65, quoting *State v. Countryman*, 4th Dist. No. 08CA12, 2008-Ohio-6700, ¶ 20; *accord State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988).  To secure reversal for the ineffective assistance of counsel, one must show two things: (1) "that counsel's performance was deficient * * *[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) "that the deficient performance prejudiced the defense * * *[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord*

*Norman* at ¶ 65. "Failure to satisfy either prong is fatal as the accused's burden requires proof of both elements." *State v. Hall*, 4th Dist. No. 07CA837, 2007-Ohio-6091, ¶ 11. "Deficient performance means performance falling below an objective standard of reasonable representation." *State v. Hutton*, 100 Ohio St.3d 176, 2003-Ohio-5607, 797 N.E.2d 948, ¶ 44. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus; *accord Strickland* at 694.

{¶12} Initially, we will detail the violations of Harper's constitutional rights. Then we analyze those violations in the context of Harper's ineffective-assistance-of-counsel claim. In doing so, we find (1) that Harper's trial counsel's performance was deficient and (2) that the deficient performance prejudiced Harper.

## A. Constitutional Violations

{¶13} Harper argues that the state improperly used Harper's invocation of his right against self-incrimination as substantive evidence of guilt. Specifically, Harper points to Deputy McCune's testimony regarding her interview of Harper. Deputy McCune interviewed Harper at the Southeastern Ohio Regional Jail, and she testified on direct examination as follows: "I told [Harper] that I was going to ask him a point blank question. I said did you rob the Zaleski General Store November 9, 2009. He became silent. He stared at me. And he said I cannot lie to you. I will not answer that question." Trial Tr. at 157

**{¶14}** "The Fifth Amendment to the United States Constitution provides that no person 'shall be compelled in any criminal case to be a witness against himself.' This provision applies to the states through the Fourteenth Amendment." *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 11, citing *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The Fifth Amendment guarantees a criminal defendant's right against self-incrimination, which includes the right to silence during police interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 467-468, 86 S.Ct. 1602, 16 L.Ed.2d 694. Additionally, a defendant can invoke his rights "at any time prior to or during questioning[.]" *Id.* at 474.

**{¶15}** Here, Harper asserted his Fifth Amendment right to silence when he stated, "I cannot lie to you. I will not answer that question." Trial Tr. at 157. *See State v. Whitaker*, 4th Dist. No. 07CA3168, 2008-Ohio-4149, ¶ 33 (holding that a defendant "clearly invoked his Fifth Amendment right to remain silent" by stating that he "did not 'want to incriminate himself.'").

**{¶16}** "An accused who asserts his Fifth Amendment right to silence should not have the assertion of that constitutional right used against him." *State v. Treesh*, 90 Ohio St.3d 460, 479, 739 N.E.2d 749 (2001), citing *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). "[E]vidence introduced by the state during its case in chief regarding the defendant's exercise of his right to remain silent during interrogation violates the Due Process Clause of both the state and federal constitutions." *State v. Perez*, 3d Dist. No. 4-03-49, 2004-Ohio-4007, ¶ 10, citing *Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, at ¶ 16-18. "This rule enforces one of the underlying policies of the Fifth Amendment, which is to avoid having the jury assume that a

defendant's silence equates with guilt."  *Id.*, citing *Leach*, 2004-Ohio-2147, at ¶ 30; *Murphy v. Waterfront Comm. of New York Harbor*, 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

**{¶17}**  We conclude the state used Harper's invocation of his Fifth Amendment rights against him.  That is, Deputy McCune's testimony created "'the impermissible inference that a failure to deny an accusation of guilt, or assert [its] contrary, [was] an admission of the accusation's truth.'"  *Whitaker* at ¶ 33, quoting *State v. Leach*, 150 Ohio App.3d 567, 2002-Ohio-6654, 782 N.E.2d 631, ¶ 28 (1st Dist.).

**{¶18}**  Additionally, the state used Harper's invocation of his right to silence against him more than once.  The state asked Deputy McCune to reiterate her testimony regarding Harper's invocation of his right against self-incrimination.  Just before the state concluded its direct examination of Deputy McCune, the following exchange ensued:

**{¶19}**  "[State]: But when you said did you do it he said I won't lie to you and then said nothing further?

**{¶20}**  "[Deputy McCune]: He said he could not lie to me and he said I will not answer that question was his exact words.

**{¶21}**  "[State]: No further questions."  Trial Tr. at 159.

**{¶22}**  Thus, the record shows that the state chose to repeat the constitutional violation against Harper.  *Compare Whitaker*, 2008-Ohio-4149, at ¶ 33 ("We recognize that the State wisely chose not to emphasize Officer Bower's testimony, either on direct examination or during its closing statements.  However, after Officer Bower's testimony, Whitaker had 'effectively lost the right to silence.  A "bell once rung, cannot be

unrung."'"), quoting *Leach,* 150 Ohio App.3d 567, 2002-Ohio-6654, 782 N.E.2d 631, at ¶ 33, in turn quoting *State v. Easter*, 130 Wash.2d 228, 238-39, 922 P.2d 1285 (1996).

**{¶23}** We also find that the prosecutor violated Harper's constitutional rights during both opening and closing arguments.

> Comments by prosecutors on the post-arrest silence or refusal to testify by defendants have always been looked upon with extreme disfavor because they raise an inference of guilt from a defendant's decision to remain silent. In effect, such comments penalize a defendant for choosing to exercise a constitutional right. *Prosecutors must therefore take care not to equate the defendant's silence to guilt.* * * * Further, they must be aware that where such comments work to the material prejudice of the defendant, they will not be tolerated. (Emphasis added.) *State v. Thompson*, 33 Ohio St.3d 1, 4, 514 N.E.2d 407 (1987).

**{¶24}** As mentioned above, during opening argument, the state previewed Deputy McCune's testimony as follows: "So detective goes interviews Mr. Harper. Talks to him for several hours. Asked at the end she says well tell me did you I'm going to ask you [sic], did you rob that store and he says I won't lie to you. You know didn't deny it. Just says didn't say anything." Trial Tr. at 2. Thus, during opening argument, the prosecutor implied that the jury should infer guilt from Harper's silence.

**{¶25}** The prosecutor again referenced Harper's choice to invoke his right against self-incrimination during closing argument. This time, however, the prosecutor explicitly told the jury that it should infer guilt from Harper's silence. The prosecutor said,

> Most importantly, at the end of the three hour or more
> interview she said listen Jason by the way tell me
> straight did you rob the store in Zaleski. He says
> didn't say no I didn't but he says I won't lie to you
> [sic]. I'm not going to answer. *That ladies and*
> *gentlemen, silence in the face of an accusation is an*
> *admission. I I rate that about a nine on the guilt scale*
> [sic]. (Emphasis added.) Trial Tr. at 221.

**{¶26}** The prosecutor's remarks impermissibly allowed the jury to infer Harper's guilt based on his assertion of a constitutional right (i.e., the right against self-incrimination). Furthermore, the prosecutor's statement that he rated Harper's silence in the face of an accusation as "about a nine on the guilt scale" reinforced the inference by equating Harper's silence to guilt. Thus, Harper has shown that there were multiple violations of his constitutional rights during trial.

**{¶27}** Next, we consider Harper's ineffective-assistance-of-counsel claim based on these constitutional violations. As indicated above, we find (1) that Harper's trial counsel's performance was deficient and (2) that Harper was prejudiced by the deficient performance.

### B. Deficient Performance

**{¶28}** Harper's trial counsel did not object to any of the constitutional violations mentioned above. Harper argues that his trial counsel's failure to object constituted deficient performance. As stated above, deficient performance is "performance falling below an objective standard of reasonable representation." *Hutton*, 100 Ohio St.3d 176, 2003-Ohio-5607, 797 N.E.2d 948, ¶ 44. The record indicates that the state clearly intended for the jury to infer guilt from Harper's invocation of his right against self-incrimination. Furthermore, we can discern no sound reason for trial counsel's failure to object to the state's multiple constitutional violations. *See Whitaker*, 2008-Ohio-4149, ¶ 35 ("There was no conceivable benefit to be derived from failing to object [to the elicitation of testimony regarding the defendant's invocation of his right against self-incrimination], and this inaction simply cannot be characterized as litigation strategy.")

**{¶29}** Thus, the performance of Harper's trial counsel fell below an objective standard of reasonable representation. Therefore, Harper has satisfied the deficiency prong of his ineffective-assistance-of-counsel claim. Next, we analyze how Harper's trial counsel's deficient performance prejudiced Harper.

## C.  Prejudice

**{¶30}** To demonstrate prejudice, Harper must show that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus; *accord Strickland*, 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

**{¶31}** The standard for demonstrating prejudice in an ineffective-assistance-of-counsel claim is lower than the prejudice standard in a plain-error analysis. The failure to object to error typically results in a waiver of all but plain error, which requires the

appellant to show that "'but for the error, the outcome of the trial clearly would have been otherwise.'" *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 181, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus.  By contrast, an ineffective-assistance-of-counsel claim does not require an outcome-determinative level of prejudice.  As the United States Supreme Court explained,

> [A] defendant [asserting an ineffective-assistance-of-counsel claim] need not show that counsel's deficient conduct more likely than not altered the outcome in the case. * * * An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable[.] * * * The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.
> *Strickland*, 466 U.S. at 693-694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

**{¶32}**  Thus, "[t]he lesser standard for reversible error that *Strickland* defines is significant." *State v. Ruby*, 149 Ohio App.3d 541, 2002-Ohio-5381, 778 N.E.2d 101, ¶ 59 (2d Dist.).  Specifically, "[t]he reasonable probability it requires the defendant to show is necessarily weighed against the burden imposed on the state to prove its case

'beyond a reasonable doubt.' If, then, confidence in a conviction based on that finding is undermined, the defendant must be given a new trial." *Id.*

**{¶33}** Here, we find that Harper suffered prejudice from his trial counsel's deficient performance because the constitutional violations pervaded the entire trial. That is, not only did Harper's trial counsel fail to object to blatant constitutional violations, but the state repeated the violations throughout the trial.

**{¶34}** While we recognize that the state presented other evidence of Harper's guilt, we cannot ignore the fact that the constitutional violations were the centerpiece of the state's case against Harper. The record indicates that the state's improper use of Deputy McCune's testimony reinforced virtually every aspect of the state's case against Harper. As detailed above, during opening argument, the prosecutor previewed Deputy McCune's testimony by telling the jury that Harper did not deny that he robbed the store, but instead, he chose to remain silent when asked whether he committed the crime. On direct examination, Deputy McCune testified that, when she asked Harper whether he robbed the store, Harper responded by stating, "I cannot lie to you. I will not answer that question." Trial Tr. at 157. Additionally, the state asked Deputy McCune to reiterate that very same testimony at end of direct examination. Finally, during closing argument, the prosecutor stated,

> Most importantly, at the end of the three hour or more
>
> interview she said listen Jason by the way tell me
>
> straight did you rob the store in Zaleski. He says
>
> didn't say no I didn't but he says I won't lie to you
>
> [sic]. I'm not going to answer. That ladies and

gentlemen, silence in the face of an accusation is an

admission. I I rate that about a nine on the guilt scale

[sic]." Trial Tr. at 221.

Thus, the state effectively transformed Harper's invocation of his constitutional rights into a confession of guilt.

**{¶35}** The violations of Harper's constitutional rights undermine our confidence in Harper's conviction, especially when balanced against the state's burden of proving Harper's guilt beyond a reasonable doubt. *See Ruby*, 149 Ohio App.3d 541, 2002-Ohio-5381, 778 N.E.2d 101, at ¶ 59. Consequently, Harper has demonstrated that there was a reasonable probability that, were it not for his trial counsel's deficient performance, the result of the trial would have been different. As a result, Harper has satisfied the prejudice prong of his ineffective-assistance-of-counsel claim.

**{¶36}** For the foregoing reasons, we find that Harper suffered from ineffective assistance of counsel. Therefore, we sustain Harper's sixth assignment of error.

III.

**{¶37}** Finally, we note that Harper does not challenge the sufficiency of the evidence in any of his remaining assignments of error. Thus, sustaining any of them would not result in Harper's acquittal. *See State v. Thompkins*, 78 Ohio St.3d 380, 387-388, 678 N.E.2d 541 (1997). Consequently, the remaining assignments of error are moot, and we decline to address them. *See* App.R. 12(A)(1)(c).

**{¶38}** In conclusion, we sustain Harper's sixth assignment of error. As a result, we (1) reverse the judgment of the trial court, (2) vacate Harper's conviction, and (3) remand this case to the trial court for further proceedings consistent with this opinion.

**JUDGMENT REVERSED AND CAUSE REMANDED.**

Harsha, J., Dissenting:

{¶39} After reviewing the totality of the evidence, my confidence in the outcome of the trial has not been undermined. Therefore, I cannot join the majority in concluding the appellant has established a reasonable probability that absent counsel's deficient performance, the result of the trial would have been different, e.g. the appellant has failed to satisfy *Strickland's* prejudice prong.

{¶40} The *Strickland* prejudice analysis ultimately focuses upon the reliability of the result. In order to establish a reasonable probability that the result of the trial would have been different, appellant must persuade us that counsel's deficient performance has rendered the outcome of the trial unreliable. *See Strickland* at 694. Based upon the testimony of Letha Toops, the store owner who was robbed, Darrell Corbin, the witness who saw the appellant crash his truck and run into the woods, Jennifer Davis and Curtis Bailey, to whom appellant admitted committing the robbery, I am confident the outcome of the trial is reliable.

{¶41} Toops testified the masked robber pointed a gun at her and said, "Give me the F'ing money." After she eventually complied, he fled to his nearby truck. She grabbed her gun and fired at the truck as he left and proceeded down State Route 278.

{¶42} About the same time, Darrell Corbin was driving toward Zaleski on State Route 278 when he met a truck in a curve. The driver of the truck lost control and hit the guardrail. As Corbin backed up, the driver ran from the vehicle and passed by Corbin so close that Corbin could have "slapped his mouth." The driver tried to cover his face with his hands but was not successful. After running a hundred feet or so, the driver ran into the woods and disappeared. Later Corbin picked the appellant out of a

photo array and positively identified him as the driver of the wrecked truck.  Corbin also identified the appellant at trial.

{¶43} Jennifer Davis and Curtis Bailey, who lived together in Logan, Ohio, testified that appellant showed up at their door about a week after the robbery looking for a place to stay.  While he was there, he told them he robbed a store in Zaleski at gun point and took money from an old lady after ordering her to "Give me the F'ing money." After he ran to his truck, the lady came after him shooting her gun.  He fled town and wrecked his truck, so he ran into the woods.  He also described unsuccessful efforts by law enforcement officials on foot and in a helicopter to find him.

{¶44} Based upon this and other evidence, I remain confident in the jury's finding of guilt.  I see no prejudice resulting from counsel's deficient performance and would reject the appellant's sixth assignment of error.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE REVERSED AND THE CAUSE BE REMANDED.  Appellee shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Vinton County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

McFarland, J.:  Concurs in Judgment & Opinion.
Harsha, J.:      Dissents with Opinion.


For the Court


BY:_____
        Roger L. Kline, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**